AMOS BENEDICT *against* DEBORAH BENEDICT.

MOTION for a new trial.

This was an action of *disseisin*, for a certain undivided part of a store in *Stratford.* The defendant pleaded the general issue, which, by agreement of the parties, was closed to the court. The issue was found for the plaintiff.

On the trial, before the Superior Court, it was proved, that the land on which the store was erected, belonged to *William Benedict*; that the store was erected at the joint expence of *William Benedict*, the owner of the land, and *Henry Benedict*, by the parol licence of *William*; that it was agreed between them, by parol, that they should occupy the building, when finished, jointly; and that it had been, by them, so occupied.

The plaintiff claimed title to the premises, by virtue of the levy of an execution in his favour against *Henry Benedict*.

The defendant was in possession of the demanded prem-

*A.* and *B.*, at their joint expence, in pursuance of a parol agreement, erected a permanent building on the land of *B.* The parties agreed, by parol, to occupy the building, jointly. Afterwards, *B.* turned *A.* out of possession. In an action of *disseisin* brought by *A.* against *B.*, demanding the possession of the building; it was held, that at law, the title to the building was, absolutely, vested in *B.*, and that the plaintiff was not entitled to a recovery.

ises; and claimed the right of possession, by virtue of a lease from *William Benedict.*

It was contended, on the part of the defendant, that as *William Benedict* was the owner of the land, the plaintiff had acquired no right to the building. It was also contended, that in this case, the action of disseisin could not be sustained. The court, however, decided, that the plaintiff, by the levy of his execution, acquired a valid title to the demanded premises; and that he was entitled to recover in the present form of action.

The defendant moved for a new trial, on the ground that the court mistook the law arising from the facts above stated; which motion was reserved for the consideration and advice of the nine Judges.

*Daggett* and *R. M. Sherman,* in support of the motion. The question in this case, is whether, if a man, by the parol licence of another, erects a building on his land, the builder can sustain the action of disseisin against the owner of the land, and turn him out of possession ? A disseisin like this, would be contrary to all former decisions on this subject. The doctrine, that in this action, the plaintiff must recover, by the strength of his own title, is too well established, now to be shaken. Had the plaintiff any title to the land on which this building was erected ? Had he any right in the fee ? This cannot be pretended.

But the question recurs, can the plaintiff recover, without shewing a title in the land, either prior, or subsequent to the erection of the building ? The fee of this land has never been transferred to the plaintiff, even by parol. The building is permanently fixed to the land : It is a part of it. *Cujus est solum, ejus est usque ad cœlum.*

No right appertaining to real estate, is more important, than the right of entry. If the builder of this building, has a right to keep it where it is, the owner of the land is deprived of the right of entry.

The question in the present case, is very important in its consequences. Upon the principle of the decision of the

VOL. V.                    I i i

Superior Court, the most important alienations may be made by parol. The most valuable portion of our real estate, consists in building-lots : And shall these be conveyed by parol agreements ? This would, virtually, be a repeal of the statute of frauds and perjuries.

But it is further contended, that the action of disseisin will not lie in this case : Nor, indeed, any action at law. The plaintiff's remedy, if he has any, must be in chancery. A court of chancery may grant him relief.

In *England,* fixtures are considered as real estate, except in a few instances, where, for the benefit of commerce, agriculture, &c. the tenant may remove them at the end of his term.

In all cases of moveable property, ejectment will not lie. If, therefore, in the present case, the building is claimed to be a chattel real, or in other words, moveable estate, the action cannot be sustained : But if it be admitted to be, strictly, real estate, as it must be, then the plaintiff has no title ; and he must fail on this ground.

*N. Smith,* contra. This action is brought to recover possession of a certain store. The plaintiff does not claim the soil, as such. The question, then, is, whether one man may own a building, and another, the land, or soil, on which it stands ? And whether such right can exist in virtue of a parol agreement ?

Our statute recognizes houses as real estate. A chamber may be considered as real estate, independent of the soil. 2 *Bac. Abr.* tit. *Ejectment.*

The plaintiff's claim rests upon this ground, that one man may own the building, and another, the land on which it is erected. He claims a right to possess the building merely ; he makes no claim to the soil.

The plaintiff erected this building, by permission of the owner of the land. He has, therefore, a valid title to it ; and ejectment is the only remedy, by which the owner can gain possession.

BRAINARD, J. It is a general principle of law, that whoever owns the land, owns, also, every thing of a permanent, substantial nature, appurtenant thereto ; every thing fixed and immoveable. " Land," says sir *Edward Coke*, " legally, includeth all castles, houses and other buildings ; so that if a man convey the land, or ground, the buildings pass therewith."

If one man goes on the land of another, and without leave or licence, erects a house, or other permanent building, it becomes, absolutely, the property of the owner of the soil ; and the builder has no remedy, even in chancery.

If a man goes upon the land of another, under a lease, and erects a building, in its nature and structure, capable of being removed, and which is contemplated by the parties, to be removed, he may, at the expiration of the lease, well remove it. This results from principles essential to commerce. But if a man, even under a lease, be it for a longer or shorter term, erects a fixed and permanent building, it becomes the property of the owner of the soil ; so that it results, that all buildings erected by one man, on the land of another, with or without licence, either remain the personal property of the builder, or become the real estate of the owner of the soil.

A building may be originally placed on rollers or runners, and be as capable of removal, as a cart or sled.

Where the building is of a fixed and permanent nature, erected under lease or licence, I by no means hold, that the builder is remediless; a court of chancery will give him ample relief, according to the circumstances of the case. These circumstances may be various in different cases.

A son, under licence, may build on land of the father, under a mutual expectation, that on the death of the latter, it will become the property of the former.

So, a man may, under a long lease, erect a permanent building on the land of another. In all these cases, a court of chancery will apportion justice to the parties. But should a man, under a short lease, erect a permanent building, say of brick, or stone, on another man's land ; a building that could

Nov. 1813.

BENEDICT
v.
BENEDICT.

not be removed without a wanton, and almost total destruction of property ; I am not prepared to say, that he has any remedy. I am inclined to say, that he must suffer the consequences, and reap the fruit of his folly.

I know, that in *England,* actions of ejectment lie for rooms and chambers in colleges, and inns of court ; but these colleges, and these inns, (from *Lincoln's* to *Staples's,*) are on the basis of soil. The founders of all these institutions, purchased the land, and erected the buildings, as appurtenants. Land is the *substratum.*

The case of *Wells* v. *Banister,* 4 *Mass. Rep.* 514. I consider in point, founded on the principles of the common law. The son, by licence, built a house on the father's land ; but the court say, " by strict operation of law, the father having the property of the land, might disturb the son in the possession of the house, and remove him from it."

From this view of the case, I am of opinion, that the charge was incorrect, and would advise a new trial.

MITCHELL, Ch. J., EDMOND, SMITH and INGERSOLL, Js., concurred in this opinion.

SWIFT, J. When a man builds a house on the land of another, by a mere parol licence or contract, he is, as to the use of the land, a tenant at will. He cannot be viewed in the light of a trespasser ; but in strict law, the house belongs to the owner of the soil ; who can, at any time, revoke the licence, and eject the tenant. Of course, the builder of the house, cannot maintain ejectment against the owner of the land.

It has been contended, that the nature of such parol licence is an agreement that the house shall remain on the land, so long as it shall last ; and being executed in part, a court of law can carry it into effect. But I apprehend, that the real contract is, that the house shall continue on the land, during the pleasure of the owner of the land : At any rate, what is conclusive on this point, is, that if a parol licence, even when carried into effect, will give the builder a right to continue

the house, so long as it shall last, and to maintain ejectment for it, then real estate may be transferred by parol ; which is directly contrary to the statute.

The plaintiff's case cannot be stronger than this. But suppose a man agrees to sell another a piece of land, puts him into possession, and the tenant builds a house upon it, and the seller then refuses to execute a deed of conveyance ; in such case, there is no question but that, at law, the seller can bring his action of disseisin, and recover the possession of the land, notwithstanding the parol contract is in part executed ; and that the only remedy of the purchaser is in chancery.

Indeed, in this case, there is no question, but that the owner of the land, can bring his action of disseisin, and turn the builder of the house out of possession. If this be so, then it follows, most conclusively, that the present action cannot be sustained.

REEVE, J. If this case were to be considered independently of any positive laws, by which it is regulated, I apprehend, that no person could be at a loss how to decide the question that has arisen in it. If the enquiry should be made of a man of sound understanding, unacquainted with the technical dogmas of legal science, what he thought of the right of a man to a house, which he had been at the expence of building on his neighbour's land, by his permission, it would never occur to him, that there was any qualification to this right. He would suppose, that it was the same right that he might have to a house built by him upon his own land ; for in this case, the house came into existence, by means of the builder's own honest industry ; and that he acquired the same right to it, that any person acquires to an article produced by his own skill and labour.

If A. should build a house on land, the property of no one; for instance, upon a desolate island, upon which he might be cast ; his right to it, would be a perfect right : And if any person should attempt to deprive him of the possession, he might use all legal means to regain that possession. And

where the owner of land, has abandoned the possession of it, with a licence that another should occupy it for a special purpose; as in this case, to build a house upon it; it would seem to him, manifestly unreasonable, that the owner of the land should disturb him in the possession of such house, or in any way prevent him from enjoying it. It would seem to him, that no man living ought to be indulged, with impunity, in preventing another from enjoying the fruits of his industry, when he, himself, consented, that he should build a house on his land, and which, by his permission, came into existence at the expence of the builder, being the product of his labour, and erected with the understanding, that he alone should enjoy it. This would be a fraudulent and unreasonable act, on the part of the owner of the land, even if he should not attempt to convert the house to his own use, but should claim a right to compel the builder to remove it.

It would be difficult for this plain man to conceive, why the owner of the land should be indulged in this caprice, after having consented, that the builder should erect and enjoy the house, without molestation; which, in most cases, would deprive the builder of the whole value of the house. In such a case, the builder would reason thus: You gave your free consent that I should build a house upon your own land, and never revoked that consent, but suffered the house to be finished; and I, therefore, became vested with a perfect, indefeasible right to the product of my labour. And if the owner of the land should urge, that he had a good right to interrupt the enjoyment of the builder, because the land was his own, the answer to such a man would be, you permitted it to be done, and it is not reasonable that you should now wrongfully deprive me of the labour of my own hands, either by claiming the house yourself, or by obstructing me in the enjoyment of it. This claim would appear to be as unfounded, as if the owner of the land, should permit the builder of a house, to take timber from his land, for the purpose of erecting a building, and the builder should erect it on his own land, and the owner of the timber should claim a right to take away the building, for the reason that the timber grew on his land.

The decision of a man possessing nothing but good sense, and a good conscience, I have no doubt, would be in favour of the builder. And while he was declaring, that to his mind, the case was a very clear one, we will suppose him to be interrupted by some sage of the law, who tells him, Whatever of equity there is in your case, it is nothing to the purpose : We are before a court of law ; and by the laws of the land, a house is real property, and cannot be conveyed but by deed ; and that deed must be recorded ; and then reads to him our statute, which requires, that the sale of a house, as well as a sale of land, to be recorded. I think the plain man would find no difficulty in answering the argument. He, doubtless, would say, that the rule of law could not apply to the case in hand. The house did not exist. There was not even a parol conveyance. No act was done by the owner of the land, except to grant permission, by parol, to build the house : But this was no conveyance. Will it be said, that there ought to have been a conveyance, after the house was built, to give the builder a title ? If this was necessary, it must be on the ground, that it was the property of the owner of the land, by reason of its being built on his land ; that he had the same perfect legal right to it, as if he had built it himself ; and that it is a necessary legal result, that whoever owns the land on which a building may be erected, owns the building also.

The court will not say, surely, that this is so, in the present case. It cannot be said, that if *A.* builds a house on *B.*'s land, and pays him a consideration for the privilege, that as soon as the house is finished, *B.* has as perfect a right to it, as if he had built it himself, unless it is a necessary legal result, or in other words, that there can be no case, in which the house is the legal property of one man, and the land, the property of another. Indeed, in the reasons given by the court, it does not seem to be their opinion, that *B.* would obtain a perfect legal title, or indeed, any title, whatever, to the house. If he does, equity can never interfere to take it away from him, any more, than it could deprive him of the trees growing upon his land. Let, then, the evi-

dence be adduced, that *B.* permitted *A.* to build, and that he did build. And to this there can be no legal objection; for it is not claimed, that there was any parol conveyance; and it must be admitted, on the reasoning of the court, that the equity of *A.*'s claim may be shewn. The court, then, cannot say, that by such means, *B.* could obtain a legal title to the house; unless, as I have before said, it results from a necessary legal principle; but it is not so, for no point is better understood, than that land may be conveyed away to one, with the exception of a house. All the land within certain bounds, including that on which the house stands, is conveyed; but the house is excepted. But the house, if sold, must be sold by deed, for it is real property; unless in case where the house is to be taken down; in which case, it has been held, that the contract for the sale, is not within the statute of frauds and perjuries.

The rule, as laid down, and not controverted, is this; certain land is sold, and a building is excepted; the land on which the building stands is conveyed, unless something appears in the deed, to the contrary. So, if a house is destroyed by fire, or decay of the land on which it stands, the loss must be sustained by the grantee, not by the grantor. And real property, whatever it may be, which is reserved, though completely severed, by the exception, from the land, remains real estate in the grantor; as when a house is excepted, the grantor owns the house, in fee simple, and the grantee owns the land beneath it, in fee simple. So, where timber trees were excepted, it was held, that the grantee held the land, in fee simple, and that the grantor had a fee simple in the timber trees. So, where *A.* granted to *B.* and his heirs, timber trees, by deed, it was held, that *B.* had a fee simple *in alieno solo,* as *A.* owned the soil in fee simple, and *B.* the trees in fee simple. *Anon.* 1 *Dyer,* 19. where the whole dispute was, whether the words in the deed excepted the soil; for if the soil was not excepted, that would pass to the grantee, although the thing reserved and standing thereon, remained in the grantor. This accords with *Coke's* opinion, *Co. Litt.* 47.

From these authorities, it appears, that one person may own the land, and another, the house standing thereon, and shall have a fee simple therein. There was no necessity, therefore, of giving a deed after the house was built ; for, by building, it seems to be admitted, that the builder gained a title to it ; and that his title may be a title in fee, although the land on which it stands, is owned in fee by another.

This view of the subject, agrees, perfectly well, with our own practice, in the distribution of estates. Land is often distributed to one, and a house to another. One chamber is often distributed to *A.*, and another to *B.*, and these are held by them in fee simple, without any regard to the land, on which the house stands ; and when the house ceases to exist, they have no claim on the land ; unless we suppose, that the several owners of rooms in a house, hold them in severalty, and are tenants in common of the land on which the house stands. If they thus hold, it would be difficult to find a rule by which to ascertain their several proportions. But this cannot be the case ; for when land is given to *A.* by a will, all the land passes within the bounds mentioned, with the buildings, unless the buildings are given to some other person ; if they are, it operates in favour of the devisee of the buildings, exactly as a grant of lands within certain bounds, with the exception of the buildings, does in favour of the grantor ; but to no greater extent.

It is acknowledged, by all writers on the law relating to real property, that where a piece of land is excepted, the buildings on the land, are also excepted, though not named ; and where there is a grant of certain lands, the buildings thereon pass, though not named ; but if there is an exception of any thing else, as herbage or trees, nothing is excepted but the thing named ; for if there is a grant of any thing else, nothing passes but the thing named. So that if black-acre is devised to *A.*, on which a house stands, which house is devised to *B.*, nothing passes to *B.* but the house ; and the land on which the house stands, together with the rest of black-acre, passes to *A.* So there is not the least difficulty in the builder's recovering the house, which is built by per-

mission of the owner of the land, and the land remaining the property of the original owner. If the land be claimed, on which the house is built, there must be a deed to pass it; but in the present case, the land is not claimed.

But it is claimed, that in this way, the owner of the land is deprived of the use of his freehold; and that this cannot be, unless he makes a conveyance of it, by deed. This I deny, unless it amounts to a grant *in perpetuum.* Why may not a man consent, that another shall have such use of his freehold, as to deprive himself of the use of it, for a time? Suppose *A.* is about to build a house near to the land of *B.,* and is desirous of occupying a part of *B.*'s lot, by placing upon it, materials for building, to which *B.* consents, and he covers *B.*'s land with brick, stone, &c., is not *B.* deprived of the use of the land? And was a deed necessary? Was any thing further necessary than parol evidence, to prove the licence, and the acts done under it? Has not the owner of the materials for building, a perfect legal right to them? And if interrupted in the possession, is he without remedy? And has the owner of the land, any greater right to interrupt the possession of the builder, than any other man? The common sense of every man, will answer these questions, as I could wish them to be answered. It is not true, that the owner of the land, is deprived of the use of it, by its being covered with materials for building; and yet, no right accrues to the owner to possess, or remove them, or to interrupt the owner in the possession of them. If, then, the occupation of land, in the manner supposed, gives the owner no right over these materials; how comes it to pass, that when the materials are converted into a house, that there should be such a difference as is claimed? Deprivation of the use of the land, in one case, does not make it necessary that there should be a deed, or even a memorandum, in writing; and in the other case, it is claimed, that there must be some memorandum, in writing. It is true, that the inconvenience will, probably, continue longer in the one case, than in the other: But this makes no difference; for if it was a case within the law, which requires any writing, the case of cov-

ering the land with materials, even for a short time, would as much require a writing, as the case of covering it with a house, for a longer time. If any interest in the land, is granted with the possession of it, there must be a written instrument, in one case, as well as in the other. There can be no parol lease, which will be binding, in such case, even for a day.

Some have supposed, that parol leases for a year, may be valid, according to the statute, which requires, that all leases for a longer time than a year, must be in writing, and recorded. The object of the statute, was, that leases should be recorded. But previous to this, the statute of frauds required, that every lease should be in writing, whether for a shorter, or longer time than a year. It was not intended, by this statute, to repeal the statute as to leases for one year.

To my mind, it is utterly impracticable, to make any distinction in the cases. If a man may, by licence, deprive himself of the use of his land, by suffering it to be covered with materials for building a house, he may, by suffering it to be covered with a house, ready built. This view of the subject is in perfect accordance with our ideas in relation to all analogous cases. *A.* is desirous of erecting a dam of a certain height, which will overflow the land of *B.*, and injure it; *A.* obtains liberty of *B.* to raise it to that height; and thus, *A.* covers the land of *B.* with water : Will not the licence justify *A.?* After licence given, can *B.* interrupt *A.* in the enjoyment of his privilege? Is it necessary that *B.* should convey the overflowed land to *A.*, in order to confirm his right? What difference exists between this case, and the case of the house? In the latter case, *A.* covered the land of *B.* with a house, by his permission : In the former case, he covered his land with water, by his permission. Shall *A.* have a right to enjoy the water thus covering the land, without interruption, and not a right to enjoy the house? Where is the distinction in the two cases? Whatever title the land can give the owner of it, to the house standing thereon, the same title is given to the water overflowing the land : And

if the law will protect *A.* in the enjoyment of the water, it will also protect him in the enjoyment of the house.

The idea that the owner of land cannot part with the use of it, except by conveyance, in writing, appears to be utterly without foundation. This position is clear, from the cases adverted to, which are directly in point. And it will be found, that in all analogous cases, the principles for which I have contended, are sustained.

Does not a man deprive himself of the use of his soil, when he sells the ground which may be dug, by the vendee, to any depth? In this case, the law requires no conveyance by deed, nor even a memorandum, in writing. Is not a man as perfectly deprived of his soil, when he suffers it to be removed, as when he suffers it to be covered, so that he cannot use it? It is difficult to perceive the distinction.

Suppose *A.*, for a valuable consideration, grants a licence to *B.* to build a house on his land; *B.*, accordingly, builds the house, and expends much labour and money in finishing it; *A.* then interrupts him in the enjoyment of it, enters it himself, and insists, that he has a right to enjoy it. At this conduct, every man's reason revolts; and most assuredly, with such equity in his case, *B.* must prevail against the unconscientious claims of *A.*, unless there is some maxim of law, so stubborn, that it knows not how to yield to common sense and conscience.

It has been objected, that ejectment does not furnish the proper remedy in this case. This, to me, is inconceivable. If *A.* enters the house of *B.*, and takes possession of it, and will not suffer *B.* to possess it; can there be any other more appropriate action to abtain possession, than ejectment? The authorities, which shew, that this is the proper action, are numerous. It lies for a cottage. *Hill* v. *Giles, Cro. Eliz.* 818. Also, for a house. *Royston* v. *Eccleston, Cro. Jac.* 654. Also, for a chamber in a second story. Also, for a coal mine, where the owner of the mine did not own the soil: Though a man may have a right to a mine, say the court, without any right to the soil; yet, the mine being in a fixed place, the sheriff has a thing certain before him,

whereof to deliver possession. *Comyn* v. *Kyneto, Cro. Jac.* 150. It lies also, for a boilary of salt, where the owner has no interest in the soil.

Where a room is distributed, and possession is taken, by a wrong-doer, what action can be invented, but ejectment? For how is the real owner to get possession of his room, unless he can eject the intruder? Is it supposed, that to bring ejectment, the owner of the house must own the land on which it stands? That could not have been the case, in any of the cases put; for, if the land had been owned by the plaintiff, as well as the building, it is not possible to conceive, that any question could have been started; and there could be no remedy in case of a sale of land, and an exception of the house; for the exception of the house, does not except the land.

I have heard it suggested, that such house was not real property. Suppose this suggestion to be well founded, the exception would be a very singular one; for by the common law, ejectment can only be brought to recover lease-hold estates for years, which is personal property; and because, in *Connecticut*, the action is used to recover real estate, it is a strange conclusion that it cannot be brought to recover chattels real. If *B.* is in possession of a term for years, and *C.* ejects him, has *B.* no remedy?

It is objected, that a licence to build a house on the land of another, is a grant of the profits of the land; and that the profits of the land are the land itself; and, of course, there must be a deed to convey the land, before the owner can be divested of the right of possession. It will be remembered, that the rule alluded to, was settled law, long before the statute of frauds; and I would ask the objector, was not a parol licence, by a parol lease for years, to take the profits of land, binding upon the lessor? And was not the profits of land, as much the land then, as it is now? And was not a deed as necessary then, as it is now, to convey land? It could not, then, be understood, that the profit of land, was, in all cases, the land itself; for, if it was, there could never have been a parol lease of land; and thereby, a right to the profits.

But such was the law, for centuries. Such lessee could not only take the profits, but where a house was so let, he could eject every intruder, and even the owner of the land in fee. And even now, since the statute of frauds, which requires, at least, a writing, to convey an interest in real property, nothing but a parol lease is necessary, to take the profits, in such cases as are analogous to the present.

A parol licence to dig gravel, or to dig a quarry of stone, is amply sufficient : And are not the gravel and the stone, the profits of the land ?

The owner of the trees growing upon the land, may sell them by parol ; and the purchaser acquires an indefeasible property in them. Are not the trees, thus sold, the profits of the land ? And yet, a deed is not necessary to convey them.

If the owner of land suffers another to cover it with materials for building a house ; does he not deprive himself of the profits of his land, as effectually, in that case, as in this, by covering it with a building ? When the owner of land gives liberty to another, to cover it with water ; is he not deprived of the profits, as much in that case, as in this ? What, then, is meant by the rule of law alluded to ? The answer is, that when a conveyance, or devise is made of the profits of land, *in perpetuum*, it amounts to a fee. In such case, the land can be of no service to any person, if another has a perpetual ownership of the profits. So a conveyance of the profits of specific lands to a man and his heirs for ever, was, in point of law, the same thing as a conveyance of the land : And at the time of the establishment of the rule, the profits might be taken by a mere lessee for years ; and after it became necessary that such lease should be in writing, the profits might be taken, under a lease at will, by the lessee, by a parol licence. And although the tenant at will is liable to be turned off the premises, by the owner of the land ; yet, the owner cannot deprive him of the crops, the fruit of his industry. In these, though growing upon the land, he has acquired a distinct interest from that of the owner of the soil ; and any injury sustained by an invasion of his interest

therein, by the owner of the soil, is redressed by an appropriate remedy.

So, where a house is built, by the permission of the owner of the land, the builder acquires an interest therein, distinct from the owner of the soil; and if his right of enjoyment is interrupted, he is entitled to his appropriate remedy.

In the present case, the licence is not a licence to take the profits of the land; and, therefore, not so strong a case, as in the sale of timber trees; but it is a licence to cover the land with a building. The licence is not *in perpetuum*; it cannot, therefore, be considered as a grant of the land. The validity of a licence, under the circumstances of this case, has never before been questioned.

TRUMBULL and BALDWIN, Js., concurred in this opinion.

New trial advised.