HORTON HALL *v.* JASPER CHAFFEE AND ELIJAH CHAFFEE.

In actions for flowing lands, possession, by permission of the owner, is title sufficient to enable the plaintiff to maintain the action.

It is of no importance of how short duration the plaintiff's title is. If it be acquired on the day the suit is brought, it will be presumed to have been antecedent to the bringing of the suit.

*Dictum.*—A licence to flow lands, (although not in writing) if executed, becomes irrevocable, at least, in equity.

*Quære?* Whether such licence can be set up against a *bona fide* purchaser, without notice in fact.

If such licence be, in its terms, revocable, it will be considered revocable at will.

TRESPASS on the case, against the defendants for building a dam across Pike river, in Enosburgh, thereby causing the water to overflow the plaintiff's land and impede the plaintiff in the use of his starch factory, situated on said river, above said dam.

Plea, not guilty, and trial by jury.

On the trial in the county court, it appeared, from deeds offered by the plaintiff, that, in 1821, David R. Nutting, who then owned the land and privileges claimed by the plaintiff, leased them, perpetually, to Isaac Fletcher, for the purpose of erecting certain buildings and operating certain machinery, specified in said lease, with a right to use water from the upper dam, sufficient to operate such machinery, and no other, whenever such use would not interfere with, or injure said Nutting's grist mill. The lease contained a condition that if Fletcher, his heirs and assigns, should neglect to put one of the branches of business, specified in the lease, into operation, and continue it for the term of three years, at any one time, then he should forfeit all the privileges conveyed by the lease. Fletcher entered, under the lease, and erected certain buildings, but failed to comply with this condition, but, of this failure, the lessor did not complain. In 1838, Fletcher conveyed his interest in the premises to the plaintiff.

In 1832, Brainard Bradley, by a title derived from the grantees of the administrator of Nutting, became the owner of all Nutting's interest in said premises, which had not been before conveyed, and, on the 27th of August, 1839, (the day when the writ in this suit was served) Bradley deeded all his interest in the premises to the plaintiff, (whereby the plaintiff acquired the fee of the land) and, in this deed, gave the plaintiff the right to use the water in operating a starch factory, instead of confining it to the particular branches of business specified in the lease from Nutting, provided he used no more water than, by the lease, he was authorized to use. The lease did not give the right of erecting a starch factory. It did not appear that the dam complained of had caused the water to overflow the original banks of the stream, or had materially affected the adjoining land. But it had raised a pond of still water, several feet deep, within the original banks, where there had previously been a quick current, and had permanently covered, to a considerable depth, the margin of the low water channel, which had usually been a naked beach. It appeared that the lower, and greater portion, of the defendants' dam had been standing and used for a dam for many years, and that the addition to its height, which had caused the injury complained of, was made in the summer of A. D. 1838, before the plaintiff's purchase from

Fletcher or Bradley. It was proved that Fletcher had never erected works to the whole extent authorized by his lease or conveyance from Nutting;—that, besides the works which Fletcher was authorized to erect and carry on, there was space adjoining the stream, and above the defendant's dam, sufficient for one or two erections for the use of water from the upper dam, which supplied the works of Fletcher, and that the erection of such new works would be rendered more expensive and inconvenient, if not impracticable or useless, by reason of the increased elevation of the defendants' dam. It was also proved that the erection of the plaintiff's starch factory was rendered more expensive and difficult from the same cause, and that the factory had been somewhat obstructed and impeded in its operation by back water, occasioned by defendants' dam. It was shown that before said dam was raised, as aforesaid, Elijah Chaffee, one of the defendants, applied to Fletcher and Bradley for their consent to such alteration, that Fletcher gave his consent, on condition that if the dam so raised should occasion injury to him, it should be lowered to its former height, and that Bradley replied to the application, that he was willing the defendant should raise his dam to the moon, if he injured no body, and that, as his own works were on the opposite side of the stream, he had no idea it could injure him. The plaintiff proved a request made by him to the defendants, several months before this suit was commenced, that said dam should be lowered to its former height. It was shown that the dam aforesaid had, in fact, occasioned no injury to Fletcher, in the carrying on of such works as he had erected under his lease, but that it would have occasioned him injury, had he attempted to use his rights to their extent. Nor did it appear that the plaintiff had sustained any injury, unless it accrued in the building and conducting of his starch factory. Upon these facts the Court were of opinion that the plaintiff had not shown himself entitled, for the mere purpose of protecting his starch factory, to revoke the licence so given to the defendants. A verdict was therefore, directed for the defendants, and the plaintiff excepted to the decision of the county court.

*H. R. & J. J. Beardsley*, for plaintiff.

I. The deeds given in evidence show the plaintiff to be the owner of the land and privilege sued for, and the question is, has the continuance of the dam, as elevated by the defendants, caused such an injury to the plaintiff as he can call upon the law to redress ?

1. As to the injury occasioned to his starch factory.

It is insisted there is nothing in the limitations and restrictions of the lease from Nutting to Fletcher, inconsistent with the right of Fletcher, or his grantee, to make such erections upon the premises as they please, provided that, in other respects, they fulfil the conditions of the lease, and use no more water than would be necessary to carry on the several branches of business enumerated in the lease.

The conditions contained in the lease, so far as they affect the plaintiff, apply to the use of the water, and the quantity taken from the dam, and do not preclude him from making whatever erections he sees fit, and propelling whatever machinery he chooses, provided he uses no more water than would be necessary to carry on the different kinds of business mentioned in the lease. This construction is sustained by the wording of the lease, and supported by authority. *Bigelow, et al.* v. *Battle, et al.* 15 Mass. R. 313. Angell on Water Courses, 96, 7.

2. Special damages, in this case, need not be shown. A probability of damage, a mere invasion of the plaintiff's right, is alone sufficient to give an action. But we insist that the case at bar is one of actual damage, dependent upon no contingency, to entitle the party injured to his action. Angell on Water Courses, 167, *et seq.* Id. 30, in note. *Allen* v. *Ormond*, 8 East's R. 4. *Hobson* v. *Todd*, 4 Term R. 71. Ld. Ray. R. 948. ———— v. *Fisher*, 1 Rawle R. 27. *Wells* v. *Walling*, 2 Wm. Black. R. 1233. *Pindar* v. *Wadsworth*, 2 East. R. 154.

3. If the plaintiff is to be restricted to the works specified in the lease, as between *him* and his grantor, still, the defendants are not in a position to question the doings of the plaintiff, or volunteer themselves as a party to what only concerns the plaintiff and his grantor.

II. As to the license given by Fletcher to one of the defendants, to elevate the dam, conditioned, if the dam so rais-

ed should occasion injury to him, it should be lowered to its former height.

1. The license being revocable in its terms, the plaintiff, as the grantee of Fletcher, had a right to determine it, and, on the neglect or refusal of defendants to reduce the dam to its former height, he can maintain his suit. The dam thus raised not only impeded him in the erection of his starch factory, but impaired its utility, and rendered impracticable the erection of any other machinery on the premises.

2. The license, being by parol, was a nullity. It could only be granted by deed. However unconditional it might have been, the party bestowing it could revoke it at pleasure.

Considering the license in the nature of a grant, the reply is, that a grant can only be created by deed, or by lapse of time, from which all necessary formalities will be presumed. *Cook* v. *Stearns*, 11 Mass. R. 537.

3. Fletcher himself revoked the license by the act of conveyance to the plaintiff.

III. There is another branch of the case, important to consider, which would seem to set at rest all questions as to the plaintiff's right.

The case shows a chain of deeds from the administrator of Nutting, down to the plaintiff, the operation of which is to vest in the plaintiff the fee of the premises, wholly unincumbered by any of the restrictions contained in the lease from Nutting. If this is so, it seems unnecessary to discuss the extent of the plaintiff's right, as derived through the lease from Nutting. If, through the lease, the plaintiff derived but a partial right, the right was made perfect in him by the chain of title from Nutting's administrator.

*Smalley & Adams* and *Rand*, for defendants.

The plaintiff claims the right of erecting and carrying on his starch factory, which is alone injured by the defendants dam, by virtue of two distinct and independent titles.

1st. Fletcher's deed to plaintiff, dated in 1838, and,
2d. Bradley's deed to plaintiff, dated in August, A. D., 1839.

The dam, which occasioned the injury complained of, was erected before the erection of the plaintiff's starch factory, and before either of these deeds to the plaintiff were execu-

ted, by the permission of Fletcher, on condition that if the dam so raised should occasion any injury to Fletcher, it should be lowered to its former height, and by Bradley on condition that it should injure nobody ; Bradley, at the same time, expressing an opinion that he did not think it could injure him as his works were on the opposite side of the stream.

At the time this license was granted by Fletcher, he then owned merely the right of erecting upon the premises, where said starch factory was afterwards erected, such buildings and machinery as the lease from Nutting specified.

Fletcher's deed to the plaintiff, conveyed the same rights which Fletcher had, at the time of granting such license, but conveyed no right to use the premises for a starch factory. The dam, erected by the defendants, has not occasioned any injury to any business, which Fletcher had a right to carry on upon the premises, at the time of granting such license, or at any subsequent period, or to any business which the plaintiff had a right, by virtue of his deed from Fletcher, to carry on upon the premises, consequently, Fletcher, if he had not conveyed to the plaintiff, could have no right to call on the defendants to remove their dam.

The plaintiff, by virtue of his deed from Fletcher, acquired no greater right than Fletcher had.

The parol license, granted by Fletcher to the defendants, if executed, is binding upon Fletcher and his grantee, until a breach of the condition upon which the license was granted has accrued. *Winter* v. *Brockwell,* 8 East, 310. *Leggins* v. *Juge,* 20 C. L. R. 287. *Mason* v. *Hill,* 27 C. L. R. 1. *Taylor* v. *Waters,* 2 C. L. R. 140.

If the condition upon which Bradley's license was granted, was broken before Bradley conveyed to the plaintiff, and Bradley had called on the defendants to remove their dam, then Bradley had a right of action against the defendants. But this right could not be assigned so as to enable the plaintiff to maintain an action in his own name.

The plaintiff cannot, by virtue of any right which he acquired under Bradley's deed, maintain this action against the defendants, unless, after the execution and recording of that deed, he called on the defendants to remove their dam.

In this case, the only request by the plaintiff to the defendants to remove their dam, was made three months before the execution of Bradley's deed to the plaintiff, consequently, the plaintiff can derive no aid from Bradley's deed to him.

The opinion of the court was delivered by

REDFIELD, J.—We think the plaintiff's title sufficient to maintain this action. Possession, with the consent of the owner, is sufficient. *Hull* v. *Fuller*, 4 Vt. R. 199. The Nutting lease limited the erections to those specified, and might have been avoided for non-fulfilment of this condition subsequent, either by the lessor, his heirs or assigns ; but it could not be so avoided by the defendants, who are mere strangers. If the lessor does not insist upon the condition, a mere stranger cannot. The deed from Bradley, too, although of the same date with the writ, will be presumed to have been first executed, and, of however short duration the plaintiff's right may have been, it is sufficient. He is not obliged to delay a single hour. For while he delays, his forbearance is ripening the defendant's intrusion into right.

The licence, upon which the defendants rely, we do not think can avail them. We do not doubt, that the authorities upon which the counsel for defendants base themselves, may be well founded. Doubtless a parol licence to flow water back upon land, when once executed, becomes irrevocable, to some extent, in equity, and this although it may be an interest in lands, &c. It is considered irrevocable upon the ground that there has been such part performance, as will justify a court of equity in compelling a conveyance of the right. How far such licence executed, could be enforced against a *bona fide* purchaser, without notice, (except from the use,) is more questionable.

But, in the present case, the licence, in its very terms, was absolutely revocable, *at will*. If Fletcher sustained *any injury*, and by this we can only understand *legal* injury, he reserved the right of revoking the license. If it caused no such injury, the defendants did not require it for their protection. So that the license amounted to just nothing. And we think that Bradley and Fletcher may well insist upon the very terms in which the license was given, that is, if it pro-

duced *no injury.* We should do manifest violence to the import of language, and all safe construction, to say that this condition signified any *(considerable)* injury. It is any, the *least,* injury, and we can make nothing more or less of it.

Judgment reversed, and new trial granted.

NOTE—by REDFIELD, J.—Since delivering the opinion of the court, in the above case, and writing out my opinion for the reporter, a late treatise, upon the subject of easements, has come to my hands, in which the cases upon the effect of a parol license to an easement in, or to the use of land, are collected, and very ably reviewed, both by the author of the text, and the American editor. Gale & Whately on the law of Easements, pp. 12, 31. Both the author and the editor obviously inclined to the view, as a corrollary, fairly deducible from all the cases, that such parol license is so far countermandable as to make the licensee a trespasser, for going upon the land, or liable to an action for continuing the use of the land, after the revocation, although not liable to any action for what had been done under the license, before revocation, which last proposition is in accordance with all the cases upon the subject. I have no doubt many cases, both English and American, may be found, and those of high authority, which either directly or incidentally recognize the doctrine, that a parol license to enjoy an easement, growing out of land, when once executed, becomes irrevocable, even at law, and the right thus acquired permanent. *Taylor* v. *Waters,* 7 Taunton, 374. *Wood* v. *Lake,* Saye, 3. S. C. Burrough's Mss. p. 36. *Webb* v. *Paternoster,* Palmer, 71. *Winter* v. *Brockwell,* 8 East. 308. 14 Serg. & R. 267. 4 id. 241. But I apprehend the just weight of authority, both English and American, in regard to the rights of the parties at law, is, that such license is within the statute of frauds, and, unless in writing, countermandable at will, even when executed, so as to make any further enjoyment of the easement a ground of action. If such a license be given by parol, and expense incurred upon the faith of it, so that the parties cannot now be placed in *statu quo,* there would seem to be the same reason why a court of equity should grant relief, as in any other case of *part performance of a parol contract for the sale of land, or any interest therein,* i. e.

FRANKLIN,
January,
1841.

to prevent fraud.  Such is the view  expressed by the  court in *Prince* v. *Case,* 10 Conn. R. 375.   So also in *Benedict* v. *Benedict,* 5 Day, 469.   But this point is not here decided.