## SIMEON LELAND, Adm'r *de bonis non* of LOVEL GASSETT, *v.* DARIUS GASSETT.

Buildings, erected for a temporary use, or barns, erected by persons other than the owner, and not intended for permanent fixtures, may, in some cases, be considered and treated as personal property ; but, as between vendor and vendee, heir and executor, mortgagor and mortgagee, all buildings which enhance the value of the estate, and are designed to be occupied by the owner thereof, agreeable to the principles of the common law, become a part of the realty, and pass with it by deed, or by descent.

Leland, Adm'r, *v.* Gassett.

Where a father permitted his son to enter upon a farm belonging to the fath-
er, and make improvements and erections, and carry on the same for his
own use and benefit, promising him that he would, at some time thereaf-
ter, give to him a deed of the farm, and the son went on and, at his own
expense, erected a house and barn upon the premises, and, after carrying
on the premises for some years for his own benefit, died, and the
father refused to convey to the administrator of the son the farm, or to per-
mit him to occupy the buildings where they stood, or to remove them
from the premises, and the jury, under the charge of the court, must have
found that the buildings were erected with a view to their being permanent,
and remaining on the land, and being occupied by the son as part of the
estate to be deeded to him thereafter, it was held that the buildings became
a part of the realty, and could not be considered as personal estate for
which the father could be made accountable in an action of trover brought
by the son's administrator.

TROVER for a house and barn.    Plea the general issue and trial
by jury.

On trial, the plaintiff, to sustain the issue on his part, gave evi-
dence tending to prove, that, in the year 1828, the defendant agreed
with his son, Lovell Gassett, the deceased, that said Lovell might go
on to a portion of the defendant's land, erect buildings thereon,
and occupy the same, and clear up and improve the land, to
his own use, and that the defendant would sometime thereafter give
said Lovell a deed of the same land; that said Lovell entered
upon the land, and, taking timber growing thereon, did, with his
own means, cause the house and barn, for which this action
was brought, to be erected, and went into the use and occupancy
of said buildings, and cleared up and improved said land, and
lived thereon, taking the products thereof to his own use, until his
death in 1833; and that in 1839, and after the first administrator
had closed his administration, the plaintiff demanded of the defend-
ant permission to occupy said buildings, to remove the same,
on payment of the value of them; all of which the defendant refused.

The defendant gave evidence tending to prove that said Lovell,
who came of age in 1821, was of feeble health, and lived in the de-
fendant's family until 1828, and had little or no property of his own;
that in 1828 the defendant agreed with said Lovell, that he might
go upon said land and build, and occupy and improve the buildings
and land to his own use, and occupy and improve as long as he

pleased, or leave the premises when he pleased, and that the defendant would help him build; that said Lovell accordingly went upon the land, took the timber thereon standing, and, with some aid afforded by the defendant in materials, money and labor, procured said house and barn to be erected, and from thence to the time of his death occupied and used the premises as aforesaid; that said house was placed upon a cellar, dug and stoned in the customary manner of constructing dwelling houses, and had a stack of chimneys laid on a stone foundation, and that the barn was built in the ordinary manner of building barns; and that said buildings remained in the same situation, as when erected, at the time of said alleged conversion.

The defendant's counsel requested the court to charge the jury,— 1st. That if said house and barn were standing on the defendant's land, in the same situation as when erected, when the demand was made, the plaintiff could not recover. 2nd. If Lovell Gassett went *into* possession of the defendant's premises, and took timber then standing and growing on said premises, and converted it into said house and barn, and said house and barn were standing on said premises, in the same situation as when erected, when the demand was made the plaintiff could not recover. 3rd. If the jury found that the defendant contributed of his own means and materials towards the erection of said buildings, then, unless they also found that the defendant made a gift to his son Lovell of all the defendant so contributed, the plaintiff ought not to recover. 4th. That, if the jury found the defendant owned the land whereon the buildings stood, and that he contributed of his own means and materials *towards the* erection of said buildings, then, there being no contract in writing between the defendant and his son relative to any interest in the land in favor of the son, the plaintiff ought not to recover. 5th. That, on all the evidence in the case, the action of trover could not be sustained, and the jury should return a verdict for the defendant.

The court refused to charge the jury as requested; but did charge them, that, if they found from the proof that Lovell Gasset erected the buildings in question on the defendant's land, by his permission, under an agreement that the defendant would deed him the land on which they stood, or, if the jury found that said buildings

were erected on the defendants land, by the said Lovell, under and pursuant to an arrangement and agreement, between the said Lovell and the defendant, that the said Lovell should occupy them upon the land where they stood, and the said Lovell did occupy them until his death, without any abandonment on his part, in either case the buildings became the property of said Lovell; and that, if the defendant had refused to permit the plaintiff, since the decease of said Lovell, either to occupy the buildings where they stand, or to move them from the defendant's land, the plaintiff was entitled to recover the value of the buildings at the time of the refusal and the interest to the time of trial; and that this value must be understood to be what the buildings were worth to remove.

The jury returned a verdict for the plaintiff. Exceptions by defendant.

*C. Coolidge* and *S. Fullam* for defendant.

1. The plain and obvious question, presented by the exceptions in this case, is this; can an action of trover be sustained for real estate, of which a plaintiff has been unjustly kept out of the possession? If the testimony tended to show that the house and barn were real estate, and attached to the defendant's freehold, he was entitled to a charge as specified in his 1st, 2d and 4th requests.

2. Trover cannot be sustained for what is fixed to the freehold. 1 Swift's Dig. 534. 3 Arch. Blackstone 149. 2 Wheatons, Selwyn 1057. *Nelson* v. *Burt*, 15 Mass. 204.

3. If Lovell Gassett had any interest in the house and barn, it was an interest in real estate, and he was a tenant at will of the defendant. Rev. St. 314, § 21.

4. If an action of trover can be maintained at all, it can be maintained against any person in possession of the property, who refuses to deliver it up to the owner, when demanded. Now in case the defendant had sold and deeded this property, would any one pretend that an action of trover could be maintained against his grantee?

5. If the buildings were personal property, (which we deny,) and the defendant furnished a part of the materials and assisted in their erection, as the testimony tended to show, he was entitled to a charge in accordance with his third request.

6. If all the testimony in the case showed that the buildings were attached to the freehold, the defendant was entitled to a charge in accordance with his fifth request.

7. Lovell Gassett took the defendant's trees and converted them into buildings and affixed them to the defendant's freehold; the defendant had the *legal title* to the buildings;—can trover be sustained against the legal owner?

*P. T. Washburn* and *D. Kellogg* for plaintiff.

1. The fact is established by the verdict that Lovell Gassett *erected the buildings*. This disposes of the defendant's third request to the court, and of so much of his second and fourth requests as refers to the *assistance* rendered by the defendant.

2. The remainder of the defendant's second request and his first and fifth are synonymous, amounting to this,—can *trover* be sustained in the case?

3. The *facts*, established by the verdict, are,—1, The property in the buildings was in Lovell Gassett;—2, They were erected by *permission* of the defendant;—3, There has been no abandonment on the part of Lovell;—4, The defendant has converted them to his own use. The permission to build was accompanied by an *agreement*, either that the defendant would *give* Lovell a *deed* of the land, or would permit him to *occupy* the buildings where they stood. Either way, this action is rightly brought.

The *foundation* of our right is to be found in the ancient rule between landlord and tenant. That was, " Where a lessee, having annexed any thing to the freehold during the term, afterwards removed it, it was *waste*." LD. ELLENBOROUGH, in *Elwes* v. *Maw*, 3 East 38. Year Book, 17 Edw. 2, cited in Ib. Note to *Herlakenden's Case*, 4 Co. 64 *a*. *Cooke* v. *Humphrey*, Moore 177. Hob. 234. STORY, J., in *Van Ness* v. *Pacard*, 2 Pet. 146. The strictness of this principle subsequently yielded to the doctrine, that a tenant might remove fixtures erected for the benefit of trade. *Poole's Case*, Salk. 368, (1703.) *Lawton* v. *Lawton*, 3 Atk. 13, (1743.) *Ld. Dudley* v. *Ld. Warde*, Ambl. 113, (1751.) *Lawton* v. *Salmon*, 1 H. Bl. 259 (*n.*) (1781.) *Dean* v. *Allaley*, 3 Esp. R. 11, (1799.) *Penton* v. *Robart*, 2 East 88, (1801.) But in *Elwes* v. *Maw*, 3 East 38, (1802) the application of the principle was *limited* strictly to erections for *trade*,—not *agricultural* erections.

The American cases, carrying out this principle, commence with *Holmes* v. *Tremper*, 20 Johns. 29, where it was held that a cider mill and press were not fixtures, and that it was immaterial whether they were let into the ground or not. In *Van Ness* v. *Pacard*, 2 Peters, 146, the same rule was applied to a two story dwelling house, having a cellar and chimney, and it was held that the *form, size, materials* and *mode of building* were immaterial, and it was denied that the case of *Elwes* v. *Maw* was authority in this country. And see *Miller* v. *Baker*, 1 Metc. 27.

Then came the application of the principle to cases of *quasi* tenancy,—as where *permission* had been given to build on another's land. Thus in *Doty* v. *Gorham et al.*, 5 Pick. 487, a shop, which the owner had moved on to the plaintiff's land, and occupied there by his permission, was held personal property. In *Russell* v. *Richards*, 1 Fairf. 429, A., owning a mill privilege, gave B. and C. permission to build a saw mill thereon,—they having bargained *by parol* for the purchase of the land. The mill was subsequently sold on execution as the *personal property* of B. and C. A. was then in possession of the land, and of the mill upon it, for about three years, and then sold the land to D. by deed with warranty; and it was held, in an action of *trover*, brought for the mill, that the mill never became part of the *freehold*, and did not pass by the deed; and the same case was again considered, 2 Fairf. 376, with direct reference to the form of the action, and it was held that *trover* would lie. And in *Hilborne* v. *Brown et al.*, 3 Fairf. 162, *trover* was sustained for a *blacksmith's shop*, built on land by *permission* of the owner; it was built on stone posts, and the forge was built on the ground.

And from these cases the doctrine has been established, that courts will not, at the present day, be governed by the strictness of the ancient principle,—but, in every case, by the *situation* of the parties, and their *intention*, as manifested by their acts, and their *equitable rights* resulting therefrom. Thus in *Marcy* v. *Darling*, 8 Pick. 283, a building on piles, driven below low water mark, was held personal property. In *Wells et al.* v. *Bannister & Tr.*, 4 Mass. 514, a house, barn, &c., built by a *son* on his *father's* land, by permission, were held personal property.

The case of *Osgood* v. *Howard*, 6 Greenl. 452, was one *identical* with the present. There the defendant had permitted his *son* " to

Leland, Adm'r, v. Gassett.

occupy the land, by whom the buildings, (a *house*, *barn* and shop) were erected with the consent and *assistance* of the defendant." The son died, and his administrator sold the buildings to the plaintiff; and it was held that the plaintiff might maintain *trover* against the *father* for the buildings, which the father had converted to his own use. And in *Barnes* v. *Barnes*, 6 Vt. 388, a school house, placed upon land by permission of the owner, was held personal property.

But if the other branch be taken to have been found by the jury,— that permission was given to build, under an agreement that Lovell Gassett might *occupy the buildings* where they stood,—the plaintiff's right to recover is equally clear. *Winter* v. *Brockwell*, 8 East. 309. *Web.* v. *Paternoster*, Palmer 71, cited in Ib.

At all events, the *barn* is personal property. In *King* v. *Otley*, 20 E. C. L. 368, a windmill, resting on the ground, was held personal property. So was a barn, resting on blocks and pattens, in B. N. P. 34. And in *Wansbrough et al.* v. *Maton*, 4 Ad. & El. 884, (31 E. C. L. 217,) *trover* was sustained for a barn, erected on a foundation of brick and stone, the foundation being let into the ground.

4. The defendant's fourth request was not warranted. It is not necessary to show any *written memorandum* of the agreement. Lovell Gassett did not bargain for any *interest* in land, nor do we now claim to recover such interest. 7 N. H. Rep. 237. 1 Fairf. 429. 3 Fairf. 162. And again, the agreement having been *performed* on the part of the plaintiff, the *defendant* cannot set up the want of such agreement; *Winter* v. *Brockwell*, 8 East 309 (n.); *Philbrook* v. *Belknap*, 6 Vt. 383; *Woodbury* v. *Parshley*, 7 N. H. Rep. 237; in which last case it was held that a *privilege*, to be exercised upon land, was not within the statute.

The opinion of the court was delivered by

WILLIAMS, CH. J. The question presented in this case is, whether the house and barn, for which the recovery was had in the county court, were personal property; for, unless they are to be so considered, the action of trover cannot be maintained. It is conceded, that the action cannot be maintained to recover the value of fixtures. Buildings, when erected for the use and convenience of

52

the owner of the soil, become a part of, and annexed to, the realty, and pass by a deed from the owner of the soil, and descend to the heir as part of the inheritance. It will not be contended, that, by virtue of an execution, the sheriff can seize and sell as personal property the houses, barns, or other buildings, erected by, and in the occupancy of, the owner of the soil. In most of the cases, which have been read, it is recognised that a house with a chimney and cellar becomes a part of the realty, and is to be treated as a tenement, particularly when erected with a view to its being permanently occupied for that purpose. This was conceded in the case of *Van Ness* v. *Pacard*, 2 Peters 137; and, indeed, the case of *Elwes* v. *Maw*, 3 East 83, seems to settle this point beyond controversy. It is undoubtedly true, that buildings, erected for a temporary use, or barns, erected by persons other than the owner, and not intended for permanent fixtures, may in some cases be considered as personal property, and treated as such.

Between vendor and vendee, heir and executor, mortgagor and mortgagee, all buildings, which enhance the value of the estate, and are designed to be occupied by the owner thereof, agreeable to the principles of the common law, become a part of the realty and pass with it by deed, or by descent. The decision of this court in the case of *Preston* v. *Briggs*, 16 Vt. 124, recognised and establised this principle in relation to a barn, erected by a mortgagor, remaining on the premises at the time of the foreclosure; and the same was recognised in Massachusetts in the case of *Winslow* v. *Merchants Ins. Co.,* 4 Met. 306, and *Butler, Adm'r,* v. *Page,* 7 Metcalf 40.

In the case before us the buildings were erected with a view to their being permanent and remaining on the land, and being occupied by the plaintiffs intestate, as a part of the estate to be deeded to him thereafter. The charge of the court supposes this to be the state of the facts. We are, therefore, all of us of opinion, that, by the rules of the common law, the house and barn, erected by the intestate under the circumstances detailed in the bill of exceptions, became a part of the realty, and cannot be considered as personal estate, for which the defendant can be made accountable in an action of trover.

It is true that the rule of the common law has been relaxed in

Leland, Adm'r, v. Gassett.

favor of tenants, in cases arising between landlord and tenant, and between the executor of the tenant for life and the remainder man, so far as to permit them to retain the property and remove buildings, erected for the purpose of trade ; and perhaps in this country the observations of the court in the case of *Van Ness* v. *Pacard*, 2 Peters 146, would extend this exception to buildings erected for agricultural purposes by the tenant. And in England, where the buildings were erected with a design to remove them, and where by custom the tenant usually removed such buildings or had them valued to the incoming tenants, a tenant has been permitted to maintain an action of trover against a party converting them; such was the case of *Wansbrough et al.* v. *Watson*, 4 Ad. and Ellis 384, (31 E. C. L. 217;) although this latter case seems to be somewhat at variance with the remarks of Ch. J. Gibbs in *Lee* v. *Risdon*, 2 E. C. L. 69, and which always appeared to me well founded ;—yet these cases do not help the plaintiff. They are exceptions to the general rule, and the plaintiff must bring his case within those exceptions, or he cannot prevail.

We are aware that there are some cases in Massachusetts and in Maine which would seem to countenance the views urged by the plaintiff. The case in the 4th Mass. 514, *Wells et al.* v. *Banister and his trustee*, does not appear to me to warrant the conclusions which have been drawn from it in the other cases. The remark that the house was " the personal property of the son " does not appear to me to be a legitimate conclusion from the facts disclosed in the case, but the reverse; and, although the decision was sound and correct, yet the inference, which was drawn from it in subsequent cases, does not appear to me to be legitimate. The case of *Benedict* v. *Benedict*, 5 Day 464, established a different principle, and, in my view, a more correct one.

The legal title to the house and barn in the case before us is in the defendant, and if the plaintiff has any remedy, it must be in chancery, as was considered in the case of *Benedict* v. *Benedict*.

The judgment of the county court is therefore reversed.