Shaw, C. J.
The estate in controversy belonged to the town of Sudbury, when it was a corporation, having the functions both of a town and parish, prior to 1780; and after dividing and forming two distinct corporations, one municipal and the other parochial, the question is, to which it belongs. The general rule in this commonwealth, to which it is believed the case of such double corporation of town and parish is peculiar, is, that if land is specially granted to a town, thus acting in a double capacity, either for municipal or parochial use; or if such a town specially, by vote or significant act, dedicates and appropriates a portion of its own territory to either the one or the other use; and it so remains, until the separation; it will vest in the town or the parish, respectively, according as it shall have been originally so given, or subsequently appropriated to parochial or municipal uses. The difficulty usually is in applying this rule to particular cases, where, as in the present case, grants and acts are equivocal.
*188 It appears that the original grant of this land, lying open and in common with a lot on which the meeting-house stands, and separated from such meeting-house lot by a travelled road only, and not by any fence, was granted by one Haynes, more than a century ago, to the west precinct of Sudbury. The term, “ precinct,” in law and in common acceptance, is used synonymously with “ parish.” Inhabitants of Milford v Godfrey, 1 Pick. 96. The grant being to a parish, was primd facie evidence that it was granted for a parochial use. This would seem to be decisive, but for one consideration, which is, that the territory, then (1740) constituting the town of Sudbury, embraced a much larger surface, including another parish, since (1780) incorporated into a separate town, called East Sudbury, the name, of which was subsequently changed by law to that of Wayland. The precinct of West Sudbury, therefore, at that time very nearly conformed in territory to that which, after the incorporation of East Sudbury, constituted the entire town of Sudbury. Still, however, it was not then a town. As a precinct, it had the functions of a parish only, although, after the incorporation of East Sudbury, the people of the same territory became a municipal corporation, and exercised the powers both of town and parish. The presumption, therefore, still remains, that the grant was made to the precinct for parish use.
Whether the corporation, after it acquired the functions both of town and parish, could have changed the appropriation of land granted to the parish, we have no occasion to decide, because we perceive no evidence of any intent to make such change. Certainly no vote to that effect appears; and we find no evidence of any decisive act. The use of it for a school-house to stand upon, from 1735 to 1780, was whilst West Sudbury was a precinct or parish only, and before it became a town by the incorporation of the new town of East Sudbury. The continuance of the school-house on the same till 1798 seems to have been simply permissive, and without any act or vote; and it was then removed and placed on land of the town. The subsequent vote of the town, authorizing the replacing of the school-house on the land in *189 question, was not a permanent appropriation to municipal use; and it seems not to have been so considered by the town, because, in eight or ten years after, and before the division of the corporation into town and parish, the town again passed a vote, authorizing the removal of the school-house to other acknowledged town land. There was no school-house or other town building upon it, when the present parish was organized, by the separation of the two characters of town and parish.
The court are of opinion, that the original grant of this land, by Haynes to the “ precinct,” impressed upon it a parochial character; that it retained that character, whilst the corporation exercised the functions of both town and parish; and that upon the separation it remained the property of the parish.

Judgment for the plaintiffs.

The case was then referred to an assessor, who made his report at the October term, 1852, submitting to the court the question, whether the defendants had the right to remove the school-house from the premises; and if they had, assessing damages at thirty-five dollars; if they had not, then at one dollar.
A. H. Nelson, for the plaintiffs.
J G. Abbott, for the defendants.
Bigelow, J.
The decision of the question presented by the report of the auditor in this case depends upon elementary principles. The term “ land ” legally includes all houses and buildings standing thereon. Whatever is affixed to the realty is thereby made parcel thereof, and belongs to the owner of the soil. Quicquid plantatur sob, solo cedit. Things personal in their nature, but prepared and intended to be used with real estate, having been fixed to the realty and used with it, became part of the land by accession, pass with it, and belong to the owner of the land. 1 Cruise Dig. (Greenl. ed.) 41; Gibbons on Fixt. 2. It follows, that where there is no agreement to change the legal rights of the parties, materials, when used for building a house, become part of the freehold, and cannot be reclaimed by their original owner after annexation to the realty, as against the owner of the land to which they have been affixed. Buildings erected on land of another *190 voluntarily and without any contract with the owner become part of the real estate, and belong to the owner of the soil. Washburn v. Sproat, 16 Mass. 449; Leland v. Gassett, 17 Verm. 403 ; Peirce v. Goddard, 22 Pick. 559.
An exception is admitted to this general rule, where there is an agreement, express or implied, between the owner of the real estate and the proprietor of materials and buildings, that, when annexed to the realty, they shall not become parts of it, but shall still remain the property of the person annexing them. In such case, the law gives effect to the agreement of the parties, and personal property, though affixed to the realty, retains its original characteristics, and belongs to its original owner. Within this exception are included not only cases where there is an express agreement between the parties, that personal property shall not become real estate by annexation to the soil, but also that large class of cases which arise between landlord and tenant, in which by agreement, either express, or implied from usage or otherwise, the tenant is allowed to retain as his own property, if seasonably removed, fixtures erected by him for purposes of trade, ornamént or ordinary use, upon leasehold premises during his tenancy. Hare v. Horton, 5 B. & Ad. 715; Russell v. Richards, 1 Fairf. 429, and 2 Fairf. 371; Heermance v. Vernoy, 6 Johns. 5.
There is nothing in the case at bar to take it out of the operation of the general rule. The building erected by the defend-' ants was not only not built with the assent, express or implied, of the plaintiffs, but was placed on the premises against their will and in violation of their legal rights. Although this was done by the defendants in the exercise of what they supposed and believed to be a right of property in themselves in the soil, yet they acted at their peril, and having failed to establish their title to the premises on which the school-house was erected, they must now bear the legal consequences of their act. It was not necessary for them to have erected a building on the land, in order to try their title to the real estate. They might have made use of other means, quite as effectual for that purpose, and unattended with serious consequences to themselves. The defendants cannot now be permitted to en *191 ter again upon the plaintiffs’ land against their consent, for the purpose of removing materials which by their original act of trespass they have annexed to the freehold. To permit this, would be to allow a trespasser to justify a second act of trespass by pleading the commission of a previous one.
It was urged in behalf of the defendants, that if they did not remove the building from the land of the plaintiffs, its continuance there might be regarded as a continuation of the original trespass, and they might thus be subjected to another action for damages. The obvious and conclusive answer to this suggestion is, that the plaintiffs, by refusing to allow the defendants to remove the building, have waived all further claim for damages by reason of its continuance on their premises. Its continuance there has now ceased to be the act of the defendants.

Judgment for the plaintiffs for one dollar damages.