## Curtiss *against* Hoyt and others.

In an action of trespass for an injury to a building, owned by and in the possession of the plaintiff, the defendants justified the acts complained of, on the ground, that they did them by the direction of *S,* who owned the land on which the building stood, subject to a right of way in the public, the building constituting an incumbrance on the land of *S ;* also, that the building being an obstruction in the highway, the defendants removed it, for the plaintiff, after he had been requested, and had neglected, to remove it; also, that such highway needed to be graded and made, and the defendants removed the building, on the plaintiff's account, in order to grade and make the road. The plaintiff, to show that he was the owner and in possession of the building, offered in evidence a deed of it to the plaintiff, executed by certain individuals, as a committee of a fire engine company ; a vote of such company, signed by all its members, authorizing the sale and transfer of the building, by said committee; proof that the company erected the building, with their own funds; that up to the time of the sale, they had used it exclusively for an engine house, and for their library ; that all the members of the company, at the time of the sale, delivered, each one, his key of the building to the plaintiff; that all prior members had, on leaving the company, left the building to their successors, making no claim to it thereafter; that the avails of the sale to the plaintiff, were appropriated, by the company, to procure for them another engine house ; and that no other persons had objected to the sale, or made any claim to the avails thereof.  Held, that such evidence was admissible, for the purpose for which it was offered ; and thereupon it was further held, 1. that the members of the company had property in the building ; 2. that though not incorporated, they, as individuals, could hold the property ; 3. that the vote of the company, with the assent of each individual member in writing, was binding, and imparted authority to their committee ; 4. that the building, under the circumstances of the case, was personal estate, and might be transferred without seal.

Though it is a general principle of law, that a building permanently fixed in the freehold, becomes a part of it, and is real estate, yet if it was erected, by the builder, with his own money, and for his own exclusive use, as disconnected from the use of the land, and with an understanding to that effect between the owner of the land and the builder, it will be considered as personal estate.

A plaintiff in trespass, having the sole and exclusive possession, may recover against a wrong-doer, the whole damage done by the defendant, though the conveyance from some of those under whom he claimed title, was defective.

Where personal property belongs to the members of a voluntary unincorporated association, especially for public, and not for private, purposes, if a member abandon the association, he thereby abandons his interest in such property, and those who remain are entitled to such interest.

Where the owner of a building leases at will the rooms therein, though they constitute the chief parts of the building, such owner is not thereby put out of possession, so as to preclude him from suing in trespass for the destruction of the building, or such an injury to it as to render it untenantable.

Where the town of *N.,* in 1804, passed a vote, that certain persons [naming them,] " have liberty to make a road from &c. over the public land, provided

*Fairfield,*
July, 1848.

Curtiss
*v.*
Hoyt.

they give a deed to the town of their own lands, two rods wide;" the deed was given accordingly, in due season; but nothing of importance towards the execution of this vote was afterwards done; it was held, that the vote was a mere *license,* and must have been executed and the road made, in a reasonable time and manner, for public travel, or the vote would cease to have any efficacy; and consequently, there was no highway at this place.

To constitute a dedication of land for a highway, the road must be made and accepted by the public: it is usually, if not always, proved, by public use and enjoyment.

Where the court, in an action of trespass for the destruction of a building, instructed the jury, that if the defendants acted *bona fide,* under a claim of right, doing no unnecessary or wanton injury, the value of the property destroyed, was the proper and legal rule of damages; but if the transaction was of a different character, and the defendants acted wantonly and maliciously, the value of the property merely, was not, of course, the rule of damages; but the jury might, in the exercise of a sound discretion, allow something more; it was held, that this instruction was correct.

THIS was an action of trespass, for an injury to a building. The declaration contained three counts; an abstract of which is given in the opinion of the court. The defendants pleaded *Not guilty,* with notice of special matter to be given in evidence by way of defence.

The cause was tried at *Fairfield, February* term 1848, before *Ellsworth,* J.

It was admitted, that neither the plaintiff, nor those from whom he claimed to have purchased the building, had any interest in the *land* on which it stood. But to show that he was the owner and in possession of said building, at the time of the alleged grievance, he offered in evidence:

1. A deed thereof to himself, dated the 14th of *January* 1843, executed by certain individuals, as a committee of a fire engine company in the borough of *Norwalk,* consisting of about twenty persons, organized by the warden and burgesses of the borough. The members of this committee were original and present members of the company; and the deed was executed in behalf of the company. It purported to release and forever quit-claim to the plaintiff, in consideration of 400 dollars received of him by said company, " all the right, title and interest of said company in and to a certain building," &c. [describing the building in question.]

2. A vote of said company, at a meeting held on the 24th of *January* 1843, authorizing the execution of said deed, signed and approved, by all the members. But no power of

attorney under seal, was given to the committee, or to any other agent.

3. Proof that said company erected the building, with funds raised chiefly among themselves, but in part by the voluntary subscription of others.

4. That the building, up to the time of said sale, had been occupied by the company exclusively, in part for an engine house, and in part for a library of their own.

5. That all the members of said company, at the time of the sale to the plaintiff, (each one of them having a key,) delivered their keys to him.

6. That all prior members of the company, had relinquished the building to their successors, and made thereafter no claim of title thereto.

7. That the avails of the building were appropriated, by the company, to procure another engine house, for them.

8. That no other persons whatever had objected to the sale, or made claim to the avails thereof.

To the admission of this evidence, the defendants objected, on the ground that it did not show, or tend to show, any property in the building, in said company, or the members thereof, which they could convey; that they were not a corporation, and could not, as a company, hold any property in the building; that they could not act with reference to a conveyance of it, by vote, or appoint a committee to sell, by vote; that said vote, of itself, imparted no authority to the committee, and they had no power of attorney under seal; that they could not sell the building, for such a purpose; and that the vote and deed conveyed no title to the plaintiff. But the court admitted the evidence.

The defendants claimed, that the court should charge the jury, that if said deed was not signed by all who were, or had been, members of the company, the plaintiff could not recover for the whole of the building, even against a tort-feasor, though the plaintiff was in possession. The court did not so instruct the jury.

It was admitted, that the plaintiff had leased the lower room of the building, for five years, to *Henry Hands*, who was in possession thereof, at the time it was removed from its foundation: also, that the upper room was, by virtue of a parol lease at will, at the time of the alleged trespass, in the

possession of *Thomas Easton*, who entered by a flight of

stairs on the outside. It was also admitted, that the building, at this time, was removed from the foundation to a point near the centre of the *Main* street passing through the borough of *Norwalk;* that the plaintiff knew it stood there, and was requested to remove it ; that it remained there several weeks, abandoned by the tenants, unoccupied, and untenantable ; and was there destroyed, in the night season, by some person or persons unknown to the plaintiff. The defendants thereupon claimed, that the plaintiff could not recover, on the ground that he was out of possession of the building.

The plaintiff claimed, that the possession of the tenants of said rooms, did not divest the plaintiff of the possession of the foundation, sides, roof, garret and outside stairs, of the building, (each of which still existed,) nor of the general possession of the building ; and that, on the removal of the building from its foundation, and its abandonment by the tenants, the possession of the whole building reverted to the plaintiff.

The defendants claimed, that the building stood in a highway in *Norwalk,* leading down *Mullen Hill,* so called, to the turnpike ; and that they removed it out of the highway, that they might grade and make it, under the authority of the town. To prove the existence of such highway, they read to the jury, a vote of the town, passed at a meeting of the inhabitants, on the 27th of *February,* 1804, in the following words: "Voted, that *Eliphalet Lockwood,* [and others named,] have liberty to make a road from the highway on the top of the hill *North* of the stores, in the now traveled path *West* of the piece of land, sold by the town, to *William* and *Buckingham St. John ;* but this grant shall not be understood to authorize the aforesaid persons to make said road on the property of any individual, but merely to make it on the public land, provided they give a deed to this town of their land, of two rods in width, where they are about opening a highway." In connexion with this vote, the defendants also offered the deed of *Eliphalet Lockwood* and others, the proprietors, on each side of the contemplated highway, whereby they, in consideration of said highway being laid open, " released and forever quit-claimed unto the inhabitants of the town of *Norwalk,* for the purpose of a public and open high-

way, all their several rights and interest in and to the prem-
ises," particularly described.    This deed was duly executed;
and said highway was fenced out, so far as the grantors own-
ed, to the top of the hill; but not on or below it; nor over
the *locus in quo.*    The defendants further claimed to have
proved, that soon after the passing of said vote, *William St.
John,* one of the grantors in said deed, opened said road,
worked upon it himself, and by his agents, and made it con-
venient for public travel; so that it then became a public
highway, and being once a highway, it so continued forever,
unless discontinued by public authority; and the defendants
asked the court to charge the jury in conformity to this claim.

On the other hand, the plaintiff claimed, that there never
was a highway over and along the place in question.    He
denied that any thing, of the least importance, had been done,
to open, grade and make the pretended highway; and claim-
ed to have proved, that until the acts of the defendants now
complained of were done, this place was substantially in its
natural state, a precipitous and impassable bank, except that
persons on foot and on horseback occasionally climbed over
it; that after said vote, nothing in substance had been done,
to grade and make said road, or to reduce the bank, and
make it passable; and that in fact, said place never had been
graded, or made passable, but was impassable and dangerous,
and never was, or could be, used, for the usual public travel.

The court submitted the questions of fact to the jury, in-
structing them, that said vote and deed would not of them-
selves, constitute the place a highway; but if they should
find in addition, that the road was graded and made, as claim-
ed by the defendants, it was a highway, and the defen-
dants were justified: but if it was not graded and made, but
was left in the condition claimed by the plaintiff, and so con-
tinued thereafter to be, the place did not become, and was
not, a highway, and the defendants were not justified in this
point of their defence.

As to damages, the defendants claimed, that if they were
liable at all, they had acted *bona fide,* under a fair claim of
right, and were liable only for the value of the property de-
stroyed, which they introduced evidence to prove did not ex-
ceed 300 dollars.

The plaintiff claimed to have proved, that the defendants

did not act *bona fide*, under a fair claim of right, but wantonly and maliciously ; that they had no reason to believe that there was a highway or public right there ; and that they had violently carried off the building, while the tenants of the plaintiff, with their goods, were in the peaceable possession thereof ; and that they had proved the value of the building, as it stood, was 600 dollars.

*Fairfield,*
July, 1848.

Curtiss
*v.*
Hoyt.

The court left the question of damages to the jury, instructing them, that in an action of this kind, if the defendants had acted *bona fide*, under a claim of right, doing no wanton or unnecessary injury, the value of the property destroyed, was the proper and legal rule of damages ; but if the transaction was of a different character, and indeed what the plaintiff claimed this to be, the value of the property merely was not of course the rule of damages, but the jury might, in the exercise of a sound discretion, allow something more.

The jury returned a verdict for the plaintiff; and the defendants moved for a new trial.

*Booth* (a) and *Butler*, (with whom was *Carter*,) in support

(a) This being the last case argued by Mr. *Booth* in this court, and but a short time before his death, a concise sketch of his life and character, will not be deemed inappropriate here.

Reuben Booth was born in *Newtown*, *Conn.*, on the 26th day of *November* 1794. When quite young, his parents removed to *Kent*, in this state. His father, though a man of considerable attainments in science, was in moderate circumstances, and required the assistance of this son in his business, (woolcarding,) to support his family. The subject of this sketch was employed in this business until he was about seventeen years of age, when, with his father's consent, he commenced the preparatory studies of a collegiate course ; and in the fall of 1813, he entered the *Sophomore* class in *Yale-College*. Shortly afterwards, he received information of his father's death, who was drowned in the *Housatonuc* river. He hastened home, expecting, at that time, to abandon his collegiate studies, as he was unwilling to reduce the slender means of his mother ; but a few friends in *Kent* generously offered to loan him the amount requisite to complete his course, and he returned to college. He graduated at the commencement in 1816, being the last at which president *Dwight* presided. Immediately thereafter, he commenced the study of the law with *David S. Boardman* Esq., of *New-Milford*, with whom he remained about a year ; and then removed to *Danbury*, where he continued his law studies with *Moses Hatch* Esq. At the same time, he was employed as an instructor in the academy in *Danbury*.

In 1818, he was admitted to the Bar, and opened an office for practice, in *Danbury*. In 1822, he was elected a representative of that town, in the General Assembly. In the same year, he was appointed judge of probate for the

of the motion, contended, 1. That the evidence offered by the plaintiff, to show that he was the owner and in possession of the building, was inadmissible. In the first place, the property in the building was in the borough;—certainly not in the plaintiff, or his grantors. Secondly, the vote of the fire engine company imparted no authority. If the company had any title, it could be transferred only by virtue of a power of attorney under seal. But no such power was given; and consequently, the deed conveyed no title.

2. That the plaintiff, if he could recover at all on a title, could recover only to the extent of his actual title. Consequently, he could recover nothing in respect to the shares of those original proprietors, who were not parties to the transfer.

3. That the plaintiff, being out of possession, could not recover in trespass. There being but two rooms in the building, and those leased, the rest of the building was adjunct to them, and was leased with them. If the building

district of *Danbury.* In this office, he continued, by successive annual appointments, until 1835. In 1830, he was elected a state senator. In 1844 and 1845, he was elected Lieutenant-Governor of the state. He died at *Danbury, August* 14th, 1848, of the dysentery, after an illness of a little more than two days. This was during the session of the county court at that place. On *Friday, August* 11th, he was engaged in the trial of a cause before that court, which he argued with his usual ability; and his death occurred on the *Monday* night following. At his funeral, the business of the place generally was suspended. He was buried in the burying-ground of the *Episcopalians* in *Danbury;* he having been, during the latter part of his life, a member of their church.

Mr. *B's* professional practice, at the time of his death, was as extensive as that of any member of the bar in the county. He was distinguished for his industry; his cases were always thoroughly prepared; his knowledge of the law was accurate. He was at once zealous for his client, and courteous to his adversary.

He was well known in this state, as a leading and active politician. His policy was always *conservative.* During the two years that he was the presiding officer of the senate of this state, the members of that body who were his political opponents, felt and acknowledged his liberality of sentiment and conduct. He was always firm in his principles; but where principles were not concerned, he regarded and treated his political opponents as friends. He was a warm and generous hearted man. Remembering that in early life, he was indebted to others for aid, no deserving young man ever asked in vain for a loan from him, which it was in his power to make. He was simple and unostentatious in his manners; kind and benevolent in his disposition. He loved the young; and they never feared to approach him, as they knew that his sympathies were with them. All classes mourn his loss.

were undermined, or the stairs torn down, could not the tenants of the rooms sue ?

4. That the vote of the town, with the deed of *E. Lockwood* and others, of themselves, constituted the place in question a highway. In the first place, if embraced within the land conveyed, it would be so. User, in such a case, is not necessary ; the deed to the town and their acceptance of it being sufficient. The question is one of *dedication ;* which may be, by deed, vote, or any act showing the intent. User is only one of the kinds of evidence of such intent. *Stafford* v. *Coyney,* 7 *B. & Cres.* 227. (14 *E. C. L.* 39. 41.) *Livingston* v. *Mayor* &c. of *New-York,* 8 *Wend.* 85. *Wyman* v *Mayor* &c. of *New-York,* 11 *Wend.* 487. *In re Furman Street,* 17 *Wend.* 661. *In re 32nd Street,* 19 *Wend.* 128. *Pearsall* v. *Post,* 20 *Wend.* 111. *City of Cincinnati* v. *White's* lessee, 6 *Pet.* 431. *New-Orleans* v. *United States,* 10 *Pet.* 662. Secondly, if not actually embraced in the deed, the vote of the town, they owning the fee, if common land, in connexion with the acts of the grantors, made that place a part of the highway. The vote was a dedication ; and after the rest of the highway had been opened, and land sold adjoining it, and dwellings built on it, the town could not deny the dedication. See the cases above cited, and *Hunter* v. *Sandy Hill,* 6 *Hill* 407. 411, 2. *Hobbs* v. *Lowell,* 19 *Pick.* 405. If any user was necessary, we have it here. But as the existence of the right does not depend on the user, the *extent* of the user does not make any difference. If it is claimed to be a *licence,* the answer is, that by the acts of the grantors, the licence is not now countermandable : it has ripened into a perfect dedication. *Brown* v. *Wheeler,* 17 *Conn. R.* 345.

5. That the plaintiff could not recover full or vindictive damages. In the first place, the defendants acted under authority of the owners of the fee—the town; and the removal was necessary. Secondly, the building was not destroyed, by the defendants.

*Hawley* and *Dutton,* (with whom was *Ferry,*) contra, contended, 1. That the evidence of title and possession which was introduced by the plaintiff, on the trial, was admissible for the purpose for which it was offered. *Tingley*

*Fairfield,*
*July, 1848.*

Curtiss
*v.*
Hoyt.

v. *Cutler,* 7 *Conn. R.* 291.    *Ward* v. *Fuller,* 15 *Pick.* 185.
*Doty* v. *Gorham,* 5 *Pick.* 487.    *Marcy* v. *Darling,* 8 *Pick.*
283.    *Wells* v. *Banister,* 4 *Mass.* 514.    *Washburn* v.
*Sproat,* 16 *Mass.* 449.    On the trial, it was conceded, by
both parties, that the building was personal estate, and no
claim was made that it was real estate.    But even if it was
real estate, the possession of the plaintiff was sufficient.    The
authorities above cited sustain this position.

2. That the plaintiff was not divested of the possession,
by the leases to *Hands* and *Easton.    Orser* v. *Storms,* 9
*Cowen* 687.    The possession of the tenants was divested, by
the removal of the building, and the whole reverted to the
plaintiff.    1 *Saund. Pl. & Ev.* 322. 868. 1 *Chitt. Plead.*
199.    *Ward* v. *Andrews,* 2 *Chitt. R.* 636. (18 *E. C. L* 435.)

3. That the defendants had no right to remove the building
as a nuisance, unless it was an actual obstruction to public
travel.    *Burnham* v. *Hotchkiss,* 14 *Conn. R.* 311.

4. That the town could not make a highway, by a mere
vote.    *Torrington* v. *Nash,* 17 *Conn. R.* 197.    Nor did the
vote and deed of 1804 constitute a *dedication.    Grand Surry
Canal* v. *Hall,* 1 *Man. & Gran.* 392. (39 *E. C. L.* 497.)
*Rex* v. *St. Benedict,* 4 *B. & Ald.* 447 (6 *E. C. L.* 482.)
*Rex* v. *Mellor,* 1 *B. & Adol.* 32. (20 *E. C. L.* 337.) 2 *Saund.
Pl. & Ev.* 921.

5. That the evidence offered by the defendants shows no
justification ; the building having been removed, (as claimed
by them,) from one highway to the middle of another.

6. That the charge as to damages, was correct.    *Treat* v.
*Barber,* 7 *Conn. R.* 274.    *Edwards* v. *Beach,* 3 *Day,* 447.
*Churchill* v. *Watson,* 5 *Day,* 140.    *Davenport* v. *Russell, Id.*
145.    *Denison* v. *Hyde,* 6 *Conn. R.* 508.    *Huntley* v. *Bacon,*
15 *Conn. R.* 267.

7. That if the defendants have shown no justification, a
new trial will not be granted, even though the charge may
not be strictly correct.    *Johnson* v. *Blackman,* 11 *Conn. R.*
342.

ELLSWORTH, J.    The first count in the declaration is
trespass for taking down, removing and converting a build-
ing, the property of the plaintiff.    The second, is for taking
and converting certain timber, boards and stones.    The third,

is for an injury to the plaintiff's reversionary interest in the said building, averring that it was leased to *Henry Hands* and *Thomas Easton*. Neither count speaks of any land of the plaintiff, nor claims damages for entering upon land ; but the entire cause of action is an injury to a *building*, or the materials of a building.

To this declaration the defendants plead and give notice, that they did the acts complained of, by the direction of one *Esther St. John;* who, they say, owned the land where the building stood, subject to a right of way in the public ; that it was an *incumbrance* on *her* land, which the plaintiff was requested to remove ; and as he neglected, the defendants did it for *him*, doing as little injury as possible. The notice further states, that the place was a highway, and that being obstructed by the building, the plaintiff was requested as aforesaid, but he neglected ; and the defendants removed the building for the plaintiff, or on his account. And further, that the highway over said place needed to be graded and made ; and the plaintiff being requested and neglecting, the defendants removed the building on *his* account, in order to grade and make the road.

This notice, it will be perceived, is not framed to justify an injury to *land* or real estate, but to a *building*, and the materials of a building. It says, the building was an incumbrance *on* land, not a part of it, and therefore, was removed, on *account of the plaintiff*. The notice then, as well as the declaration, treats the building as *vested in the plaintiff;* and hence, as no part of the realty, but personal estate entirely.

We have been thus particular in stating what appears from the declaration and notice, the better to judge of the course taken in relation to the proof objected to.

It will not be denied, that any evidence which conduces to prove that the plaintiff was the owner, *or* in possession of the building, at the time of the trespass, was admissible, under some, if not all, of the counts in the declaration : certainly, under the first and second ; for there, possession is enough ; and so under the third ; for possession is some evidence of title ; and if otherwise, evidence which is admissible to one fact in issue, is not to be wholly rejected.

Now, the motion states, that the plaintiff, in order to show, that he was the owner and in possession of said *building*,

offered in evidence a deed of it to the plaintiff, executed by certain individuals, as a *committee* of a fire engine company, consisting of some twenty persons; the committee themselves being, and having been, from the beginning, members of the company : also, a vote of said company, signed by all its members by name, authorizing the sale and transfer of the building, by said committee : also, proof that said company erected said building with their own funds, though small sums were given by others : also, that up to the time of said sale, the company had exclusively occupied and used it, in part for an engine house, and partly for their library : also, that all the members of the company, at the time of the sale, delivered, each one, his key of the building, to the plaintiff: also, that all prior members had, on leaving said company, left to their successors said building, and made thereafter no claim to the same; and that the avails of the sale to the plaintiff, were appropriated, by the company, to to procure for themselves another engine house ; and that no other persons whatever had objected to said sale, or made claim to the avails thereof.

Now, we would ask, if this evidence does not conduce to prove any fact in issue ? Has it no bearing upon the questions of possession and title ? Is it so, that the giving up of possession, by those who erect a building, amounts to no proof at all ? And is not the instrument of sale of some importance ? Will any professional man say, that such testimony can be wholly withheld from the jury ? We think not.

The first objection is, that it does not tend to prove that the company, or its members, had any property in the building to convey. We think it does. Next, that the company, not being incorporated, could not hold property. But they could, as individuals ; and this the plaintiff claimed to be the fact. Next, that they could not act by vote—could not appoint a committee by vote, to sell or convey. The plaintiff claimed, that each member gave his individual consent to what was done. Next, that said vote imparted no authority to the committee : and that having no power under seal, they could not sell and convey. If the building was personal estate, it is agreed, this objection falls to the ground. And such we consider it to be. We would here observe, that had it been claimed to be a part of the freehold, the fact

might depend on circumstances; as under what agreement as to removal, it was put upon another's land; or whether it stood on blocks, or otherwise; so that the jury must have passed upon the question; and hence the introduction of the vote and deed could not have been arrested in a preliminary stage of the trial, but the defendants must have raised the question on the charge of the judge.   This was not done.

*Fairfield,*
*July, 1848.*

Curtiss
*v.*
*Hoyt.*

We say, however, that as far as we can see, this was personal estate.   The declaration throughout treats it as such. The defendants are sued for removing a *building*, or the materials of a building.   The defendants' notice corresponds with the declaration, treating it as exclusively personal, *i. e.* as a *building of the plaintiff*, standing on *another's land*.   It disclaims any interest in it, as in Mrs. *St. John*, because she owned the land, and professes, that it was removed, because it was an *incumbrance* on her land.   It states that the plaintiff was requested to remove it, and as he did not, the defendants did it, for *him*, or on *his* account. The motion likewise states, that on the trial, the plaintiff did not claim the land, nor pretend to have any interest in it. Both parties having thus treated the building as personal property, this conduct may well conclude them, on this point, on the trial; and the defendants having told the plaintiff what they should claim, he had a right to shape and introduce his evidence accordingly.

We are aware, that the general principle of law is, that a building permanently fixed in the freehold becomes a part of it—that *prima facie* a house is real estate, belonging to the owner of the land on which it stands.   But it may be personal estate, and, in our judgment is so, where it is a conceded or established fact, that it was erected by the builder, with his own money, and for his own exclusive use, as disconnected from the use of the land, and with the understanding of the owner of the land and the builder, that it was thus erected, and is removable at the pleasure of either; and this, whether it was on rollers, &c., or not.   We know of no case opposed to this view of the law.   If a man sows upon his own land, the crop is parcel of the land; if he sows upon his neighbour's land, with the agreement that the crop is to be his and removable by him, it is not parcel of the land, but personal estate.   The cases are parallel.   So buildings, crops

and earth itself, sold to be separated from the land, are not within the statute of frauds; for, by reason of the understanding and agreement of the parties, they have lost their character, as parcel of the realty.    In what manner and under what circumstances this building was erected, does not appear from the motion; nor could these be assumed, in the progress of the evidence, so as to exclude proof from the jury.    From the course taken, we are led to suppose, that the parties well knew the circumstances to be such, as that the building was not real estate.    However, the objection to the deed is technical at best, in no way affecting the merits of the case, and leaving other parts of the case unimpaired.    The deed was good to convey, at least, the title of those who signed it, and of all who, by signing the authority, authorized its execution.

These views as to the character of a building on another's land, are countenanced by numerous cases.    *Baldwin* v. *Breed* & ux. 16 *Conn. R.* 60., though the main question there was unlike this.    *Prince* v. *Case,* 10 *Conn. R.* 379., where a dwelling-house was built, by permission, on another man's land.    *Parker* v. *Redfield,* 10 *Conn. R.* 490., where the lessor had agreed with the lessee, that he might erect buildings on the land, and at the end of the term remove them. *Benedict* v. *Benedict,* 5 *Day,* 464.    *Wells* v. *Banister,* 4 *Mass.* 514. *Marcy* v. *Darling,* 8 *Pick.* 283.    *Ashmun* v. *Williams,* 8 *Pick.* 402. 404.    *Curry* v. *Commonwealth Insurance Company,* 10 *Pick.* 540.    *Doty* v. *Gorham* & al. 5 *Pick.* 488. 6 *N. Hamp.* 10.    1 *Fairf.* 433.

Besides, it appears to us, proof of title is not essential in order to sustain the verdict, and that a new trial will be of no advantage to the defendants; especially, as the third count is for the same cause of action as the first, and so alleged to be.

We do not feel the force of the further objection, that the committee could not sell the building to raise funds to procure another, for the same purpose; especially, with the consent of each member of the company.

We now come to a question of a different character.    It is said, the court should have charged the jury, that if the deed was not signed by each person, who was, at the time, or had been, a member of the company, the plaintiff could not recover the *whole* damages, even though he was in possession alone, against a wrong-doer.    But why not?    Who could sue for an injury to possession, but the sole and exclusive

possessor ? Were the plaintiff holding possession *with others*, there would be force in the objection, so far as the deed is essential to a recovery. But he did *not* hold with others, but alone. He purchased alone ; he used and rented the property alone ; and there was not the least evidence, claim or pretence, that any body was connected with the plaintiff. Who was it that was in possession, or an owner, with him ? Was it those who had left the company ? We have no doubt, if personal property belongs to the members of a voluntary unincorporated association, especially for public, and not private, purposes, if a member abandons the association, he thereby abandons his interest in such property : it is equivalent to a renunciation of his right, and those who remain and succeed are entitled to such right.

It no where appears, that there were any other members of the company, than such as signed the authority. The defendants did not so claim. They only required the court to charge, on this point, *hypothetically*, which it was not bound to do. Besides, the mere fact, that the deed was *not signed* by all who were, or had been, members, can be of no decisive importance ; the title and possession might be complete, without that *exact fact ;* further proof might have been introduced on the trial.

Again, it is said, the plaintiff could not be in possession, because of the leases to *Hands* and *Easton.*

If this objection was well founded, we see not why the plaintiff could not recover on the third count ; but we do not think the objection *is* well founded. The owner of a building can hardly be said to be out of possession, because he has leased the rooms, *as such*, to divers individuals. We think he still remains in the general possession of the building, and can well sue, especially if it be *destroyed*, though these rooms be the chief parts of the building. Can we say, as matter of law, that an owner of a block of several stories in height, is not in possession, because its various rooms and chambers are leased to merchants and lawyers ; that a hotel-keeper is not, because his rooms are hired for a day or a week ; or the corporation of a college is not, because the rooms of the college building are rented to the students ? May not these owners enter upon their respective premises, and repair or add to the buildings, provided no injury is done to the occu-

*Fairfield,*
July, 1848.

Curtiss
*v.*
Hoyt.

*Fairfield,*
*July, 1848.*

Curtiss
*v.*
Hoyt.

pants? It must be kept in mind, there is a difference between renting an entire building, and the rooms of the building specifically. In the one case, a destruction of the building, as by fire, does not put an end to the lease, nor the payment of rent; in the other, it does produce that effect. If it were not so, insuperable difficulties would arise. Suppose there were tenants in rooms successively over each other; if the building is destroyed, which of them is to enjoy the land where it stood? Or can any one of them forbid the landlord to rebuild? Can the occupant of a cellar under a burnt building, prevent the lessor from rebuilding at all, or only at a greatly enhanced price?

This distinction has been recognized, in *Stockwell* v. *Hunter*, 11 *Metc.* 448., and *Kerr* v. *The Merchants' Exchange Company*, 3 *Edw. Ch. R.* 315. In the first of these cases, it was held, that a demise of the basement room of a building several stories in height, without any stipulation, by lessor or lessee, for rebuilding, in case of fire or other casualty, gives the lessee no interest in the land, though he pays all the rent in advance; and if the whole building is destroyed by fire, his interest in the room is terminated. In the second, that where a tenant hires rooms only, his interest ceases with the destruction of the building; therefore, where the complainants hired certain apartments, designated by numbers, in the *Merchants' Exchange* in *New-York*, which was destroyed by the great fire, during the demise; it was held, they could not claim new rooms (on the old site,) in the new *Exchange*.

Were it necessary, we could go further in this case. A tenancy *at will* of one of the two rooms in the building, makes a case more favorable for the plaintiff, than leases on time. And whether the building be real or personal, notwithstanding such a right by a tenant *at will*, we are persuaded that an action of trespass well lies, by the owner, for the *destruction* of the building: this is not a mere disturbance of the possession. *Com. Dig. tit.* Trespass, B. 2. *Co. Litt.* 57. *a.* note 378. by *Harg.* 2 *Rol. Abr.* 551. *tit.* Trespass. n. 3. 4. *Starr* v. *Jackson*, 11 *Mass.* 519. *Lienow* v. *Ritchie*, 8 *Pick.* 235. *Hingham* v. *Sprague*, 15 *Pick.* 102.

So, too, it might be said, that the building and materials *reverted* to the lessor, after the building was moved from the place and became uninhabitable, and was *abandoned* by the tenants.

Again, it is said the charge of the court is wrong, as to a highway down *Mullen Hill,* so called, to the turnpike. To prove the existence of a highway where the building stood, the defendants read a vote of the town of *Norwalk,* passed in 1804, *forty-two years* before the trespass was committed; expressing that *Eliphalet Lockwood* and five others, [naming them,] all of whom are dead, so far as appears, " *have liberty to make a road from,* &c., over the *public land,* provided they give a deed to the town of their own lands two rods wide." The deed was given accordingly, in due season. The claim assumes, that the building stood in the supposed highway over the common land. Now, it was not claimed by the defendants, that the vote and deed *alone* created a highway over this land; but that said highway was soon after laid out and made, and continued to be used thereafter; and that all this established a highway. This the plaintiff denied. He insisted, that nothing of importance towards the execution of the vote, over the public land, had been done; and if not, there was here no highway. The question of fact was properly submitted to the jury. They found that nothing material had been done, and so there was no highway at this place. This is correct. We construe the vote as a mere *license;* and that it must have been executed, and the road made in a reasonable time and manner, for public travel, or it ceased to have any efficacy. If personal estate must be taken possession of, in six years, and real estate, in fifteen, to save the title, how much more is a *license,* dormant forty-two years, extinguished and gone? As the persons who had the *liberty,* did nothing for the benefit of the public, on the public land, but left it "substantially in its natural state, impassable and dangerous," the consideration of the licence failed. And it could not, with propriety, after the lapse of forty-two years and the change of circumstances, be assumed that the town of *Norwalk* would renew its ancient licence.

The vote and deed, and slight acts of *St. John,* on the public land, cannot, as has been urged upon us, constitute a dedication of this common or public land, for a highway. This is not the language or spirit of the vote. It is "they shall have *liberty* to make a road," &c. And what is a dedication, without an *acceptance* by the public?—an acceptance usually, if not always, proved, by public use and enjoyment. Here,

*Fairfield,*
July, 1848.

Curtiss
*v.*
Hoyt.

there has been no general use or enjoyment; but, on the contrary, the place has remained an impassable and precipitous bank, with trifling exceptions.

Nothing remains but the question of damages. The rule has so often been adjudged by this court, in actions of this character, in accordance with the charge of the judge, that no comments are called for. *Edwards* v. *Beach,* 3 *Day,* 447. *Churchill* v. *Watson,* 5 *Day,* 130. *Davenport* v. *Russell,* 5 *Day,* 145. *Denison* v. *Hyde,* 6 *Conn. R.* 508. *Treat* v. *Barber & al.* 7 *Conn. R.* 274. *Merrills* v. *The Tariff Manufacturing Company,* 10 *Conn. R.* 384. *Huntley* v. *Bacon,* 15 *Conn. R.* 267.

In this opinion Church, Ch. J., and Storrs and Hinman, Js., fully concurred.

Waite, J. I concur in the opinion expressed in this case, with the exception of that part relating to the question whether the building was real or personal property. That, in my judgment, must depend rather upon the manner in which the building was attached to the land, than upon the circumstance that the owner of the land has no beneficial interest in the building.

The general rule upon this subject, I consider to be well settled, that a building attached to the land, in a fixed and permanent manner, becomes a part of the real estate, and must be treated and conveyed as such. *Benedict* v. *Benedict,* 5 *Day,* 464. *Baldwin* v. *Breed,* 16 *Conn. R.* 60. *Buckland* v. *Butterfield,* 2 *Brod. & Bing.* 54. (6 *E. C. L.* 17.)

But, on the other hand, a building may be placed upon the ground in such manner as not to become permanently fixed, and consequently, may be treated and conveyed as personal property; as much so as a building resting on rollers or runners. *Naylor* v. *Collinge,* 1 *Taun.* 19. 21. *The King* v. *Otley,* 1 *B. & Adol.* 161. (20 *E. C. L.* 369.) *Wansborough* v. *Maton,* 1 *Adol. & Ell.* 884. (31 *E. C. L.* 217.)

To this general rule, however, some exceptions have been made in favour of tenants, for the encouragement of trade and manufactures; and they have been permitted to remove buildings erected by them, for such purposes, which, if erect-

ed under other circumstances, they could not remove, without becoming chargeable with the commission of waste.

But I cannot accede to the doctrine, that if a man erects a dwelling-house, in a fixed and permanent manner, upon the land of another, by his license, that dwelling-house becomes personal property, and may be transferred in the same manner as a cart or a wagon. In my opinion, it can only be conveyed as real estate, although the owner of the building may have such an interest therein, as will be protected by a court of chancery, and in some instances, be recognised in a court of law.

However, a consideration of that question becomes unimportant, because it does not appear from the notice, that the building, in this case, was so attached to the land as to become a part of the realty, and to require a deed for its conveyance. Indeed, the inference seems rather to be, that it was not permanently fixed; and consequently, we cannot say that the court erred in admitting evidence to prove a conveyance of it as personal property.

New trial not to be granted.